863 P.2d 1088

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Donna CASTLEMAN and Tyrone Clement, Defendants– Appellants.**

**Nos. 13673, 13317.**

Court of Appeals of New Mexico.

Feb. 11, 1993.

Certiorari Granted April 12, 1993.

Certiorari Quashed Sept. 16, 1993.

468

Tom Udall, Atty. Gen. and Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Christopher Bulman, Asst. Appellate Defender, Santa Fe, for defendants-appellants.

## OPINION

BLACK, Judge.

Defendants appeal their convictions for distribution of an imitation controlled substance in violation of NMSA 1978, Section 30–31A–4 (Repl.Pamp.1989). Both Defendants challenge the Imitation Controlled Substances Act, NMSA 1978, §§ 30–31A–1 to –15 (Repl.Pamp.1989) (the Act), as being unconstitutionally vague and overbroad. Defendant Clement also contends the act deprived him of the equal protection of the law. Defendant Castleman further raises issues concerning the jury instructions in her case and the sufficiency of the evidence to convict her. Not persuaded by Defendants' arguments, we affirm.

*FACTS*

The evidence supporting the charges against Defendant Castleman was presented through the testimony of police officer Jim Estrada. He testified that he met Castleman and told her that he wanted to buy one-half gram of cocaine. He testified that they had a brief conversation regarding the purchase of the cocaine. Approximately three hours later, Estrada again encountered Castleman. He testified that she produced a packet, which was given to Estrada; Castleman received fifty dollars from Estrada. Estrada testified that the packet contained what appeared to him to be methamphetamine. After the substance was tested, it was determined not to be a controlled substance. Castleman testified that she never met with Estrada on the day in question.

Defendant Clement was tried on stipulated facts at a bench trial. Clement was outside a bar when he was approached by undercover police officer Jacobo, who asked Clement if he had a "rock," a street name for a measure of cocaine. Clement pulled a cloth out of his pocket and opened it. The cloth contained several small foil packets, which Jacobo testified was a common means of packaging cocaine. Clement handed Jacobo one of the packets and Jacobo handed Clement a twenty-dollar bill. The substance purchased by Jacobo was tested and determined not to be a controlled substance.

## I. *CONSTITUTIONALITY OF THE ACT*

### A. *The Act Is Not Unconstitutionally Vague.*

The Act makes it unlawful "for any person to manufacture, distribute or possess with intent to distribute an imitation controlled substance." Section 30–31A–4. An imitation controlled substance is defined as "a substance that is not a controlled substance which by dosage unit appearance, including color, shape, size and markings and by representations made would lead a reasonable person to believe that the substance is a controlled substance." Section 30–31A–2(D). The New Mexico Act is typical of those adopted by state legislatures across the country as part of the legislative response to the increasingly serious problem of drug dealing. Phoebe Carter, Annotation, *Validity, Construction, and Effect of State Statute Regulating Sale of Counterfeit or Imitation Controlled Substances*, 84 A.L.R.4th 936, § 2[a] (1991).

Defendants contend that the Act is unconstitutionally vague. "A statute is unconstitutionally vague, and thus offends due process, if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited...." *State v. Gattis*, 105 N.M. 194, 197, 730 P.2d 497, 500 (Ct.App.1986). A vagueness challenge must be examined in the light of the facts of the case at hand and must be

examined in the light of the conduct with which Defendant is charged. *State v. Pierce,* 110 N.M. 76, 81–82, 792 P.2d 408, 413–14 (1990). When reviewing a statute for constitutionality, this Court presumes the statute is constitutional. *State v. Segotta,* 100 N.M. 498, 500, 672 P.2d 1129, 1131 (1983). The burden is therefore upon the party attacking the constitutionality of the enactment to demonstrate its invalidity. *City of Albuquerque v. Jones,* 87 N.M. 486, 488, 535 P.2d 1337, 1339 (1975).

■ Here, we believe that the language of the Act clearly prohibits the manufacture, distribution, or possession with the intent to distribute a substance that looks like and is represented as being a controlled substance, but is not. *See People v. Singleton,* 151 Misc.2d 1051, 574 N.Y.S.2d 631 (N.Y.City Crim.Ct.1991). Defendants argue that the Act is vague because there is no explicit statement in the statute regarding the intent necessary to prove guilt.

■ It is true that there is no explicit statement regarding the required intent for culpability under the Act. However, that does not mean that no culpable mental state is required. It must be clear that the legislature meant to eliminate intent as a part of the offense before a statute should be considered as creating a strict liability offense. *See State v. Herrera,* 111 N.M. 560, 563, 807 P.2d 744, 747 (Ct.App.), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991). There is no indication here that the legislature intended to impose strict liability under the Act. In fact, in considering the Act as a whole, we notice the legislature precluded the defense of mistaken belief that the distributed substance was genuine. *See* § 30–31A–8. Implicit in such a defense is the belief that the item distributed was a controlled substance. *See State v. Lauterbach,* 33 Wash.App. 161, 653 P.2d 1320 (1982). Thus violation of the Act requires either proof of knowledge that the substance was an imitation controlled substance or, indirectly, knowledge that it was a bona fide controlled substance. Since knowledge is established in either event, the crime of distribution of an imitation

controlled substance is not a strict liability crime.

■ The mental element of the act relates to the representation underlying the nature of the substance being transferred. *People v. Pharr,* 696 P.2d 235 (Colo.1984) (en banc); *see State v. Marsh,* 9 Kan. App.2d 608, 684 P.2d 459 (1984); *Lauterbach,* 653 P.2d at 1322. As the Louisiana Supreme Court stated in *State v. Pierre,* 500 So.2d 382, 384–85 (La.1987): "It is impossible for one to unknowingly represent that a substance is an illegal drug or narcotic. When one 'represents,' he acts with intent. Thus, the criminal intent required by the statute is implicit in the word 'represented.'"

We believe the Act evinces a legislative intent to require general criminal intent. " 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a further consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be general criminal intent.' " *State v. Bender,* 91 N.M. 670, 671, 579 P.2d 796, 797 (1978) (quoting *People v. Hood,* 1 Cal.3d 444, 82 Cal.Rptr. 618, 626, 462 P.2d 370, 378 (1969)). The Act establishes a crime that requires only the general intent to distribute a substance represented to be a controlled substance.

■ Under the facts of the cases here, each Defendant contracted for the sale of a controlled substance. Once the transfer was made, the substance was found not to be a controlled substance. However, the substance appeared to be a controlled substance and, more importantly, had been represented as such by each of the Defendants. We hold that a person of ordinary intelligence could have determined that Defendants' conduct here fell within the class of acts prohibited by this statute. *See State v. Henderson,* 478 N.W.2d 626 (Iowa 1991).

The Act is not unconstitutionally vague.

**B.** *The Act Is Not Overbroad.*

■ Defendants argue, pursuant to *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), that the Act is overbroad. "A statute is unconstitutionally overbroad, and thus offends the first amendment, if it not only forbids conduct constitutionally subject to proscription but also sweeps within its ambit those actions ordinarily deemed to be constitutionally protected." *Gattis*, 105 N.M. at 197, 730 P.2d at 500. A statute is unconstitutionally overbroad if it criminalizes speech that is protected by the First Amendment. *Id.* at 198, 730 P.2d at 501.

■ Initially we note that we do not believe that the majority of what the Act criminalizes is speech. The Act prohibits manufacture, distribution, or possession with intent to distribute of a substance under circumstances that would lead a reasonable person to believe that the substance was a controlled substance. Such prohibitions are addressed to conduct, not speech. *Pierre*, 500 So.2d at 384; *Morrow v. State*, 704 P.2d 226 (Alaska Ct.App. 1985); *People v. Matkovick*, 101 Ill.2d 268, 78 Ill.Dec. 130, 461 N.E.2d 964, *appeal dismissed*, 469 U.S. 806, 105 S.Ct. 64, 83 L.Ed.2d 15 (1984); *State v. Sharkey*, 204 N.J.Super. 192, 497 A.2d 1291 (App.Div. 1985). Moreover, in the context of verbal contracts to provide illegal drugs, the First Amendment does not protect speech which is the vehicle of crime. *See United States v. Varani*, 435 F.2d 758 (6th Cir.1970).

■ Defendants present an example of citizens demonstrating for the legalization of marijuana by selling "joints" filled with tea leaves to passers-by as a fund-raiser and a symbol of their displeasure with current drug laws. This hypothetical has no relevance to these Defendants, since it demonstrates no impairment of their rights on the present record. *See State v. Hines*, 78 N.M. 471, 432 P.2d 827 (1967); *People v. Hicks*, 222 Cal.App.2d 265, 35 Cal.Rptr. 149 (Dist.Ct.App.1963). Moreover, as the Supreme Court of Illinois noted in rejecting this same hypothetical in *Matkovick*, 461 N.E.2d at 967, "demonstrators who use tea leaves in a display calling for the legaliza-tion of marijuana ... would hardly, as required by the statute, 'lead a reasonable person to believe the substance to be a controlled substance.' "

The Act is not unconstitutionally over-broad.

**C.** *Equal Protection.*

■ Pursuant to *State v. Boyer*, Defendant Clement contends that he was denied equal protection of the law because the prosecutor had unbridled discretion to charge him with either distributing an imitation controlled substance, or fraud of less than one hundred dollars. The two statutes about which Defendant expresses concern each require proof of different elements and therefore there is no violation of equal protection guarantees. *State v. Marchiondo*, 85 N.M. 627, 515 P.2d 146 (Ct. App.), *cert. denied*, 85 N.M. 639, 515 P.2d 643 (1973). Defendant was properly charged with distribution of an imitation controlled substance. Clement's right to equal protection of the laws was not denied.

## II. *JURY INSTRUCTIONS*

■ Defendant Castleman contends that the jury was improperly instructed on an essential element of the offense. Even though the instructions given were tendered by Castleman, she contends that she did not waive objection to them. *See State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991). She contends that the jury should have been instructed as an element of the crime that the State was required to prove she "knowingly represented" an imitation substance as a genuine controlled substance. As we pointed out previously, this crime is a general intent crime with the concept of "knowingly" implicitly incorporated in the "representation" requirement. Therefore, the only intent instructions required were the general intent instruction, SCRA 1986, 14–141, and the instruction on the definition of imitation controlled substance, which includes the requirement of representation. Since both of those instructions were given, there was no error.

■ Castleman also contends that the law was misstated when the jury was instructed that it could find her guilty if she "transferred" an imitation controlled substance. She contends that the Act contains a definition of "distribute" as "sell." *See* § 30–31A–2(C). She argues that "transfer" is a much broader term than "sell" and, therefore, the jury was improperly instructed. However, under the facts of this case, there was no question that the substance was conveyed in exchange for money. Therefore, no fundamental error occurred. *See State v. Orosco*, 113 N.M. 780, 784–86, 833 P.2d 1146, 1150–52 (1992) (no fundamental error when there is no evidence or suggestion in the facts that could have put the missing element in issue).

## III. *SUBSTANTIAL EVIDENCE*

■ Castleman also argues that there was insufficient evidence to support her conviction. Specifically, she argues that there was no evidence regarding "dosage unit appearance." This issue is without merit as there was testimony from the undercover officer who purchased the substance stating that, based on his experience as a narcotics officer, he believed that the substance in the packet sold to him was methamphetamine. There was sufficient evidence to support Defendant's conviction.

We hold that the Imitation Controlled Substances Act is not unconstitutionally vague or overbroad and, as applied here, did not violate Clement's right to equal protection. Further, the jury in Defendant Castleman's case was properly instructed. Likewise, there was sufficient evidence to support her conviction. Defendants' convictions are affirmed.

IT IS SO ORDERED.

ALARID and PICKARD, JJ., concur.